CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/11/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **JENNY F.**[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:22-cv-00036 |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Jenny F. ("Jenny") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381-1383f. Jenny alleges that the ALJ did not properly consider the opinions of her treating physicians.

I conclude that substantial evidence does not support the Commissioner's decision. Accordingly, Jenny's motion for summary judgment is **GRANTED in part** (Dkt. 14), the Commissioner's motion for summary judgment is **DENIED** (Dkt. 17), and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Jenny failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). I find that remand is appropriate here because the ALJ failed to properly consider the opinions of Jenny's treating physicians.

## CLAIM HISTORY

Jenny filed for DIB and SSI in October 2014, claiming her disability began on September 14, 2012, due to bulging discs in her back, complications from fractured vertebrae, arthritis in her knees, major depressive disorder, anxiety disorder, carpal tunnel in her hands, high blood pressure, a torn ligament in her left foot, and bladder problems. R. 78, 89, 102, 120. The state agency denied Jenny's applications at the initial and reconsideration levels of administrative review. R. 78–88, 89–99, 102–19, 120–37. On April 11, 2017, ALJ Joseph Scruton held a hearing to consider Jenny's claims for DIB and SSI. R. 52–77. Counsel represented Jenny at the hearing, which included testimony from vocational expert John Newman. On September 22, 2017, the ALJ entered his decision analyzing Jenny's claims under the familiar five-step process[3] and denying her claims for benefits.[4] R. 15–43. Jenny appealed the ALJ's decision, and the Appeals Council denied Jenny's request for review on September 28, 2018. R. 1–4.

Jenny appealed the decision to the United States District Court for the Western District of Virginia. On February 20, 2020, I entered a Report and Recommendation recommending that

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Jenny was 40 years old on her alleged onset date, making her a younger person under the Act. R. 41.

Jenny's case be remanded for further proceedings because the ALJ did not properly consider Jenny's moderate limitation in concentration, persistence, or pace. R. 1432–47. District Judge Norman Moon accepted my Report and Recommendation on March 6, 2020, and remanded the case to the Commissioner. R. 1431. On November 19, 2020, the ALJ held another hearing to consider Jenny's claims for DIB and SSI. R. 1374–99. Counsel represented Jenny at the hearing, which included testimony from vocational expert Robert Jackson. On February 1, 2021, the ALJ entered his decision analyzing Jenny's claims under the familiar five-step process and again denying her claims for benefits. R. 1341–62.

The ALJ found that Jenny suffered from the severe impairments of left knee degenerative joint disease and chondromalacia, lumbar spine degenerative disease, obesity, generalized arthralgia, status post ureteral surgeries, left shoulder disorder (rotator cuff tear/tendinitis) onset in 2019, left hip trochanteric bursitis with onset in the past two years, carpal tunnel syndrome in 2013 with no significant medical findings in the past four years, history of substance abuse, anxiety disorder, and depressive disorder. R. 1344. The ALJ found that Jenny was mildly limited in the broad functional area of interacting with others, mildly to moderately limited in the broad functional area of understanding, remembering, or applying information, and moderately limited in the broad functional areas of concentrating, persisting, or maintaining pace and adapting or managing oneself. R. 1345–46.

The ALJ determined that Jenny's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 1344. The ALJ

specifically considered SSR 19-2p[5] (obesity), listing 1.02 (major dysfunction of a joint),[6] listing 1.04 (compromise of a nerve root (including the cauda equina) or the spinal cord),[7] listing 12.04 (depressive, bipolar, and related disorders), and listing 12.06 (anxiety and obsessive-compulsive disorders).

The ALJ concluded that Jenny retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 1347. Jenny can stand and walk for no more than one hour. Id. She can sit for a full workday with the opportunity to stand from a seated position for up to five minutes hourly. Id. Jenny can never crawl, climb, kneel, or crouch. Id. She can occasionally stoop, balance, and overhead reach bilaterally. Id. Jenny can frequently but not constantly reach, handle, finger, and feel bilaterally. Id. Her concentration, persistence, and pace are adequate to perform a full workday and to deal with routine work situations, with normal breaks scheduled at approximately two-hour intervals. Id. Jenny can perform no more than simple, routine tasks. Id. She may, apart from regularly scheduled breaks, fall off-task up to 10% of the workday and take up to two to three unscheduled restroom breaks weekly of approximately five minutes if needed. Id. Jenny can incur up to one day per month on average of unscheduled absences from the workplace. Id. The ALJ determined that Jenny did not have any past relevant work but could perform jobs that exist in significant numbers in the national economy, such as inspector/grader and document preparer. R. 1360–61. Thus, the ALJ

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[6] Since the ALJ's opinion, the Social Security Administration has updated its listings. The listing the ALJ referred to is now available at listing 1.18.

[7] Since the ALJ's opinion, the Social Security Administration has updated its listings. The listing the ALJ referred to is now available at listings 1.15 and 1.16.

determined that Jenny was not disabled. R. 1361. Jenny appealed the ALJ's decision, and the Appeals Council denied her request for review on May 17, 2022. R. 1331–34.

## ANALYSIS

Jenny alleges that the ALJ did not properly consider the opinions of her treating physicians and the ALJ's decision to find the treating physicians' opinions not persuasive is not supported by substantial evidence.

### A. Medical History Overview

1. <u>Medical Treatment</u>

Jenny has a history of major depressive disorder and anxiety disorder. R. 384, 594, 597, 1693, 2551. At her appointments, Jenny sometimes appeared with sad or depressed mood, flat or blunt affect, fair insight and judgment, and/or an unkempt appearance, but she normally had an intact memory and logical thought form. R. 586, 596–97, 600, 606, 1068, 1083, 1102, 1113, 1693, 1703, 1768, 1794, 2620, 2647. Her mental impairments manifested with sleep disturbance, diminished energy, crying spells (sometimes daily), agoraphobia, panic attacks (sometimes daily), hallucinations, flashbacks of past sexual abuse, and poor motivation. R. 588, 592, 599, 602, 1067, 1079, 1082, 1099–1100, 1108, 1692, 1703, 1712, 1729, 1738–39, 1756, 2551, 2639. Jenny sometimes reported that she was too depressed or anxious to leave her home. R. 1751, 1754, 1765.

Despite her compliance with her medication regimen, Jenny's providers continuously changed or adjusted her medications because her medications were not managing her symptoms, with several providers labeling her depression "uncontrolled." R. 361, 587, 588, 594, 596, 602, 1081, 1092, 1099, 1104, 1110, 1248, 1693, 1696, 1712, 1733, 1771, 1776, 2637, 2644. In October 2014, Jenny denied voluntary crisis stabilization because she could not leave her

children. R. 588. In May and December 2017, Jenny endorsed suicidal ideations. R. 1696, 1729. In November 2017, Jenny admitted to cutting herself earlier in the year. R. 1713. In January and May 2018, Jenny's psychiatrist recommended that she receive electro-convulsive therapy ("ECT") because "she has treatment resistant depression[.]" R. 1737, 1771.[8]

2. Medical Opinions

In August 2013, Lea Bruner, M.D., completed a medical evaluation and concluded that Jenny was not able to participate in employment and training activities in any capacity for six months, was unable to sit, stand, bend, or squat for more than 15 minutes, and was limited by her moderately severe depression. R. 1019–20. The ALJ gave these opinions little weight. R. 1357. The ALJ reasoned that the opinions were not consistent with the medical and psychiatric evidence in the record. Id. Specifically, the ALJ noted that Jenny typically had normal mental status examinations and reported improvement on her psychiatric medications. Id.

In August 2014, Jane Sailer, M.D., a treating physician, completed a medical evaluation and concluded that Jenny was not able to participate in any employment and training activities at that time and that her back pain and depression with significant isolation limited Jenny's abilities. R. 1021–22. The ALJ gave these opinions little weight. R. 1358. The ALJ reasoned that the opinions were not consistent with the medical and psychiatric evidence in the record. Id. Specifically, the ALJ noted that Jenny typically had normal mental status examinations and reported improvement on her psychiatric medications. Id.

In March 2015, state agency physician Richard Surrusco, M.D., reviewed the record and found that Jenny could occasionally lift and carry 20 pounds and could frequently lift and carry

---

[8] Jenny also has a history of several physical impairments, including pain in her back, knees, shoulders, and hips, carpal tunnel, morbid obesity, gastroenteritis, and bladder incontinence. These physical impairments are not relevant to the arguments that Jenny makes about her mental impairments. Accordingly, I have not discussed Jenny's physical impairments.

10 pounds. R. 85. Dr. Surrusco also concluded that Jenny could stand, walk, or sit for six out of eight hours. Id. The ALJ gave these opinions little weight. R. 1356.

In March 2015, state agency psychologist Howard Leizer, Ph.D., reviewed the record and found that Jenny's mental impairments were non-severe and that she had no restriction of activities of daily living, no difficulties in maintaining social function, no repeated episodes of decompensation, and mild difficulties in maintaining concentration, persistence, or pace. R. 84. The ALJ gave these opinions little weight. R. 1357. The ALJ reasoned that "psychiatric evidence of record showed [Jenny] had the severe impairments of depression and anxiety." Id.

In July 2015, Jeanette Schoonmaker, M.D., a treating physician, completed a medical source statement and found that Jenny had a marked limitation in her ability to maintain concentration and pace and a moderate limitation in her ability to understand and remember short, simple instructions, to carry out short, simple instructions, to understand and remember detailed instructions, to carry out detailed instructions, and to make judgments on simple, work-related decisions. R. 1023. Dr. Schoonmaker also concluded that Jenny would miss three days of work because of her chronic pain and depression, which manifests as fatigue, poor sleep, and anhedonia. R. 1024. The ALJ gave these opinions little weight. R. 1358. The ALJ reasoned that Dr. Schoonmaker "only saw [Jenny] through telemedicine from a remote site" and that Jenny "typically had normal mental status examinations with no more than conservative care." Id.

In August 2015, state agency physician Eugene Noland, M.D., reviewed the record and found that Jenny could occasionally lift and carry 20 pounds and could frequently lift and carry 10 pounds. R. 114. Dr. Noland also concluded that Jenny could stand or walk for three out of eight hours and could sit for six out of eight hours. Id. The ALJ gave these opinions some

weight. R. 1356. The ALJ reasoned that the medical evidence supports a finding of sedentary residual functional capacity. Id.

In August 2015, state agency psychiatrist Hillery Lake, M.D., reviewed the record and found that Jenny had no restriction of activities of daily living, no repeated episodes of decompensation, and moderate difficulties in maintaining social function and in maintaining concentration, persistence, or pace. R. 112. The ALJ gave these opinions some weight. R. 1357. The ALJ reasoned that the record supports a moderate limitation in concentration, persistence, and pace but does not support a moderate limitation in interacting with others. Id. Further, the ALJ reasoned that the record supported additional limitations in understanding, remembering, or applying information and in adapting or managing oneself. Id.

In April 2017, Michael Tyler, M.D., a treating physician, completed a medical source statement and concluded that Jenny had extreme limitations in understanding and remembering detailed instructions, in carrying out detailed instructions, in making judgments on simple, work-related decisions, and in interacting appropriately with the public. R. 1329–30. Dr. Tyler also found that Jenny had marked limitations in maintaining concentration and pace, moderate limitations in understanding and remembering short, simple instructions, and slight limitations in carrying out short, simple instructions. R. 1329. Dr. Tyler concluded that Jenny would miss three days of work per month due to her anxiety and depression. R. 1330. The ALJ gave these opinions little weight. R. 1359. The ALJ reasoned that Jenny had normal mental status examinations and conservative care and "described performing numerous daily activities, which support no more than moderate limitations in functional areas." Id.

In November 2017, Angela Wheeler, B.S., prepared a letter presented to the Appeals Council and described Jenny's inability to work due to her difficulty being around groups of

9

people and continued depressive symptoms that were uncontrolled by medication changes. R. 1688. The ALJ gave these opinions little weight. R. 1359. The ALJ reasoned that Ms. Wheeler's opinions were based on Jenny's subjective allegations and were inconsistent with objective evidence "which shows [Jenny] had normal mental status examinations and conservative mental health care." Id.

In December 2020, Thad Garland, M.D., a treating physician, completed a medical source statement and concluded that Jenny had marked limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. R. 2772. Dr. Garland also found that Jenny had moderate limitations in her ability to maintain attention for two-hour segments, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, perform at a consistent pace, and deal with stress of semiskilled and skilled work. R. 2771–73. Dr. Garland noted that Jenny suffered from a marked loss of ability to concentrate secondary to depression and that her major depressive disorder and anxiety disorder would cause her to be absent from work more than three times per month. R. 2772, 2774. The ALJ gave these opinions some weight. R. 1359. The ALJ reasoned that Dr. Garland's opinion "is somewhat consistent with the record in that lesser amounts of time off-task and absences are warranted by the record as a whole." R. 1360. However, the ALJ found the rest of Dr. Garland's opinions to be inconsistent with the record. Id.

### B. Medical Opinion Evidence

Jenny argues that the ALJ erred in his consideration of the opinions of Drs. Garland, Tyler, Schoonmaker, and Sailer, who were all treating physicians. Jenny argues that these doctors' opinions are consistent with their treatment notes and the other medical evidence in the record. Pl.'s Br. at 64–68, Dkt. 15. Specifically, Jenny argues that the ALJ's dismissal of these

opinions based on Jenny's conservative care and normal mental status examinations is not supported by substantial evidence. Id.

Jenny submitted her application in October 2014, thus, 20 C.F.R. § 404.1527 governs how the ALJ considered the medical opinions here.[9] The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a

---

[9] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

The ALJ considered the opinions of Drs. Garland, Tyler, Schoonmaker, and Sailer. As to Dr. Garland, the ALJ considered Dr. Garland's opinions that Jenny had marked limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and moderate limitations in her ability to maintain attention for two-hour segments, to maintain regular attendance and be punctual, to sustain an ordinary routine without special supervision, to perform at a consistent pace, and to deal with stress of semiskilled and skilled work. R. 1359. The ALJ considered Dr. Garland's opinions that Jenny would be absent from work more than three times per month on average. Id. The ALJ gave these opinions some weight but reasoned that the only part of Dr. Garland's opinion consistent with the record was "that lesser amounts of time off-task and absences are warranted by the record as a whole." R. 1360. Otherwise, the ALJ found Dr. Garland's opinions inconsistent with the record of a "conservative history of care and response to medication." Id.

As to Dr. Tyler, the ALJ considered Dr. Tyler's opinions that Jenny had extreme limitations in understanding and remembering detailed instructions, in carrying out detailed instructions, in making judgments on simple, work-related decisions, and in interacting appropriately with the public, marked limitations in maintaining concentration and pace, moderate limitations in understanding and remembering short, simple instructions, and slight limitations in carrying out short, simple instructions. R. 1359. The ALJ also considered Dr. Tyler's opinion that Jenny had been unable to work since 2013 due to her depression and

anxiety. Id. The ALJ gave these opinions little weight and reasoned that Jenny had normal mental status examinations and conservative care and "described performing numerous daily activities, which support no more than moderate limitations in functional areas." Id.

As to Dr. Schoonmaker, the ALJ considered Dr. Schoonmaker's opinions that Jenny had a marked limitation in her ability to maintain concentration and pace and moderate limitations in her ability to understand and remember short, simple instructions, to carry out short, simple instruction, to understand and remember detailed instructions, to carry out detailed instructions, and to make judgments on simple, work-related decisions. R. 1358. The ALJ also considered Dr. Schoonmaker's opinion that Jenny would miss three days of work because of her chronic pain and depression, which manifests as fatigue, poor sleep, and anhedonia. Id. The ALJ gave these opinions little weight and again reasoned that Jenny "typically had normal mental status examinations with no more than conservative care." Id.

As to Dr. Sailer, the ALJ considered Dr. Sailer's opinions that Jenny was not able to participate in any employment and training activities at that time and that her depression with significant isolation limited Jenny's abilities. R. 1357–58. The ALJ gave these opinions little weight and once again reasoned that Jenny typically had normal mental status examinations and reported improvement on her psychiatric medications. R. 1358.

I agree with Jenny that the ALJ's assessments of the opinions of Drs. Garland, Tyler, Schoonmaker, and Sailer are not supported by substantial evidence. In rejecting the opinions of these treating physicians, the ALJ repeatedly notes that the opinions are inconsistent with the record showing that Jenny typically had normal mental status examinations and conservative care and responded well to her treatment. The ALJ determined the weight given to the opinions of Drs. Garland, Tyler, Schoonmaker, and Sailer entirely on whether he found the opinion

13

"consistent" with the record. Apart from a citation to 22 exhibits, the ALJ fails to cite any record evidence documenting conservative care or response to treatment when discussing the opinions of the treating physicians. R. 1358–60.

Although Jenny did have many normal mental status examinations, the ALJ fails to acknowledge that Jenny sometimes appeared with sad or depressed mood, flat or blunt affect, fair insight and judgment, and/or an unkempt appearance. R. 586, 596–97, 600, 606, 1068, 1083, 1102, 1113, 1693, 1703, 1768, 1794, 2620, 2647. Further, while the ALJ indicates that Jenny responded well to her treatment and her condition improved, this simply ignores the evidence in the record documenting continued sleep disturbance, diminished energy, crying spells (sometimes daily), agoraphobia, panic attacks (sometimes daily), hallucinations, flashbacks of past sexual abuse, and poor motivation while medicated. R. 588, 592, 599, 602, 1067, 1079, 1082, 1099–1100, 1108, 1692, 1703, 1712, 1729, 1738–39, 1756, 2551, 2639. The ALJ also fails to acknowledge that despite her compliance with her medication regimen, Jenny's providers continuously changed or adjusted her medications because her medications were not managing her symptoms, with several providers labeling her depression "uncontrolled." R. 361, 587, 588, 594, 596, 602, 1081, 1092, 1099, 1104, 1110, 1248, 1693, 1696, 1712, 1733, 1771, 1776, 2637, 2644. Jenny responded so poorly to her medication that Dr. Garland recommended that she receive electro-convulsive therapy ("ECT") because "she has treatment resistant depression[.]" R. 1737, 1771. The ALJ notably does not indicate how a normal mental status examination is inconsistent with these symptoms Jenny experienced. In ignoring this evidence, the ALJ failed to consider the extent of Jenny's mental health diagnoses. The ALJ's unsupported conclusions are not enough to undermine the opinions of professionals or show that their opinions are not consistent with the record.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. However, here, the ALJ failed to adequately consider the opinions of Drs. Garland, Tyler, Schoonmaker, and Sailer and relied on unpersuasive and unsupported reasoning to discount the relevant opinions of the record. Accordingly, I conclude that the ALJ's decision is not supported by substantial evidence.[10]

## CONCLUSION

For these reasons, an order will be entered **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

Entered: August 11, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[10] Because I find that remand is warranted based on the ALJ's failure to adequately analyze the treating physicians' opinions, Jenny's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).